IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CORBIN COLLINS RODIER,<br><br>Defendant. | Case No. 1:26-MJ-412 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Officer Nicholas Berry, being duly sworn, depose, and state:

1. I am a Police Officer with the Central Intelligence Agency (CIA) in Fairfax County, Virginia. I have been employed with CIA Police (CIAP) since 2022. I graduated from the Federal Law Enforcement Training Center in 2023, after which I received an additional twelve weeks of CIA-specific training. Prior to working at CIA, I was a security contractor with the Federal Protective Service.

2. This affidavit is submitted in support of a criminal complaint charging the defendant, CORBIN COLLINS RODIER ("RODIER"), with a violation of Title 32, Part 1903.7(a) of the Code of Federal Regulations (Trespassing, Class B Misdemeanor), Title 32, Part 1903.6(g) of the Code of Federal Regulations (Failure to Comply with Instructions or Directions of Authorized Persons, Class B Misdemeanor), Title 18, United States Code, Section 111 (Resisting or Impeding Officers, Class A Misdemeanor), and Title 18, United States Code, Section 701 (Possessing a false U.S. Department badge, Class B Misdemeanor).

3. The facts and information contained in this affidavit are based upon my personal knowledge and observations, information conveyed to me by others, and my review of documents

and other evidence. This affidavit contains information necessary to support probable cause, but it is not intended to include every fact and matter observed by me or known to the United States.

## STATUTES CHARGED

4. Title 32, Part 1903.7(a) of the Code of Federal Regulations, states, in pertinent part "Entering or remaining on any Agency installation without proper authorization is prohibited."

5. Title 32, Part 1903.6(g) of the Code of Federal Regulations, states, "All persons entering on to or when on any Agency installation shall comply with the instructions or directions of authorized persons."

6. Title 18 of the U.S. Code, Section 111, states, in pertinent part, "Whoever forcibly assaults, resists, opposes, impedes, intimidates, interferes with an [officer or employee of the United States] while engaged in or on account of the performance of official duties."

7. Title 18 of the U.S. Code, Section 701, states, in pertinent part, "Whoever manufactures, sells, or possesses any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof....shall be fined under this title or imprisoned not more than six months, or both.

## SUMMARY OF FACTS TO SUPPORT PROBABLE CAUSE

8. On or about Thursday, October 15, 2026, I was working in a mobile unit at CIA Headquarters in Fairfax County, Virginia, which is within the special maritime and territorial jurisdiction of the United States and within the Eastern District of Virginia.

9. At CIA Headquarters, a vehicle entering the restricted lanes toward the CIA main gate passes numerous signs clearly delineating prohibited activities, including presence without authorization. Persons entering the restricted lanes must either turn around, continue toward the

primary police checkpoint for authorized vehicles, or turn into the Visitor Control Center (VCC) area located approximately 1,100 feet inside CIA property. Both the primary police checkpoint at the main gate and the VCC serve as entry points to the secure area within the CIA fenceline.[1] Signs posted at the dedicated VCC lane direct Uber and Lyft drivers into the VCC parking lot area. Before entry is allowed into the VCC parking lot, motorists approach a VCC kiosk, at which there is a badge reader for the scanning of CIA-issued credentials, as well as a camera and microphone to communicate with motorists who do not have scannable credentials. Once an individual scans the badge, officers confirm its validity and then lift a barrier to allow entry into the VCC parking lot.

10. At approximately 5:45 a.m. on Thursday, October 15, 2026, I observed through stationary cameras a vehicle stop in the VCC slip lane, just prior to the kiosk. An individual exited the back of the vehicle, removed bags and boxes and placed them on the side of the lane, and then removed additional items from the trunk. During this timeframe, there was significant inbound traffic, including traffic in front of and behind this vehicle. I drove to the individual's location, along with other officers who arrived separately. When I arrived, I directed the individual to sit on the curb as I attempted to determine why he was at CIA. At first, the individual handed me an alleged Department of Veterans Affairs personal identity verification (PIV) card. I then asked for an identification card, at which time he handed me a Florida Driver's License identifying him as CORBIN COLLINS RODIER. RODIER indicated he was nonverbal and began utilizing a separate device to communicate with me. He appeared to understand our conversation and his communication through the device was clear. Through the device, he stated that he was at CIA because he wanted to be the Speaker of the CIA.

---

[1] The fencing is not co-located with the CIA property line, i.e., the property line extends past the fencing.

11. As I turned to speak to another officer, RODIER stood and began walking toward the VCC and main gate area. RODIER walked a distance of at least 20 feet away from officers, as I repeatedly gave him verbal commands to stop and return; RODIER did neither. I then approached RODIER and grabbed one wrist, while another officer grabbed his other wrist, and we attempted to reposition them behind his back for handcuffing. RODIER immediately tensed before his wrists were aligned for handcuffing and the three of us went to the ground. RODIER forcefully took his arms back from officer control and tucked them under his body as he first turned on his side and then used his legs and feet to turn himself onto his stomach. Based on my knowledge, training, and experience, I recognized this maneuver as active resistance. Another officer on scene retrieved a collapsible baton to pry Rodier's arms from underneath his body. I maintained my hold on RODIER's wrist, which was still pinned under his body, to prevent him from reaching an item that could endanger himself or others. Six officers were ultimately required to safely place RODIER in handcuffs. During officer's attempts to handcuff RODIER, a folding Swiss army knife began to fall out of his right front pants pocket. From his person, officers also retrieved a Leatherman multi-tool and two cans of mace.

12. CIA investigators called the Department of Veterans Affairs (VA), which provided additional information that RODIER was not an employee and the identification card RODIER presented was not an authorized VA credential.

**CONCLUSION**

I respectfully submit that the foregoing facts in this affidavit demonstrate probable cause to believe that, on or about October 15, 2026, within the special maritime and territorial jurisdiction of the United States, in the Eastern District of Virginia, CORBIN COLLINS RODIER violated Title 32, Part 1903.7(a) of the Code of Federal Regulations (Trespassing, Class B Misdemeanor),

Title 32, Part 1903.6(g) of the Code of Federal Regulations (Failure to Comply with Instructions or Directions of Authorized Persons, Class B Misdemeanor), Title 18, United States Code, Section 111 (Resisting or Impeding Officers, Class A Misdemeanor), and Title 18, United States Code, Section 701 (Possessing a false U.S. Department badge, Class B Misdemeanor).

Respectfully submitted,

Officer Nicholas Berry
Central Intelligence Agency Police

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on October 15, 2026.

Lindsey R Vaala

Digitally signed by Lindsey R Vaala
Date: 2026.10.15 13:34:09 -04'00'

The Honorable Lindsey R. Vaala
United States Magistrate Judge
Alexandria, Virginia